# EPSTEIN SACKS PLLC
**ATTORNEYS AT LAW**
**100 LAFAYETTE STREET - SUITE 502**
**NEW YORK, N.Y. 10013**
**(212) 684-1230**
**Fax (212) 571-5507**

**BENNETT M. EPSTEIN: (917) 653-7116**
**SARAH M. SACKS: (917) 566-6196**

Hon. Colleen McMahon
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, NY 10007

December 8, 2022

**Filed on ECF**

<u>United States v. Curtis Hilliard</u>
22 Cr. 82 (CM)

Dear Judge McMahon:

      We are court appointed counsel to the 45-year-old Curtis Hilliard, who is scheduled to be sentenced by the Court on December 15, 2022. We submit this letter as our sentencing memorandum. We respectfully submit that a sentence of 60 months is one that is "sufficient but not greater than necessary" to serve the purposes of sentencing under 18 U.S.C. §3553(a).

      Five years is a significant sentence, and not one we have chosen arbitrarily. It is based upon a ten-month downward variance, for which we advocate herein, on account of the ten months Curtis has already served under deplorable conditions at the MDC, conditions that have hardly improved from the time of his arrest and incarceration at the beginning of February, despite the rest of the world opening back up at this point in the pandemic. A sentence of 60 months would take cognizance of this and be exactly ten months below the low end of the guidelines here.

      Such a sentence would also be based upon the mitigating circumstances specific to this case. As described in more detail below, Curtis had more than just the proverbial "rough childhood." Both of his parents abused drugs at home, and his father also sold drugs. When Curtis was 19 years old, his older brother died in a car accident at the age of 22 and, within that same year, his father died of kidney failure at the age of 55. With no real supervision and structure, Curtis never finished school. Instead, he succumbed to negative influences in his neighborhood and modeled the behavior he saw in his own home. We therefore believe that these reasons, as is described in more detail below, warrant a 60-month sentence as one which sends the appropriate message for individual and general deterrence.

### I. Curtis Grew Up in Crime Infested Neighborhoods and His Parents, Who Were Addicted to Drugs, Neglected him and his Siblings

Curtis was born on July 9, 1977, to Johnnie Mae Hilliard and Curtis Hilliard Sr. They lived in the Harlem neighborhood of Manhattan. There were five siblings in the Hilliard household: Keith Carter, his maternal half-brother, and then Dorian, Curtis, Quincy and Shannon Hilliard, who shared both parents. Curtis was the middle child. Keith, who was the oldest, died from cancer in 2018, when he was in his early 50s. Dorian, who was a few years older than Curtis, died in a car accident in 1996 at the age of 22. His father, Curtis Sr., died within the same year at the age of 55 from kidney failure. Curtis was 19 years old at the time.

Curtis was raised mostly in Harlem, but also for a short time on Davidson Avenue in the Bronx, neighborhoods that were drug and crime ridden. Although his parents provided a home and food, they were both drug addicts (his mother used crack and cocaine and his father used heroin). Curtis' mother has also shared with counsel that Curtis Sr. sold drugs. The parents' drug use led them to neglect their children. At a young age, Curtis was left to care for his younger siblings. During his PSR interview, Curtis shared that he felt like his parents did not love him because they continuously chose drugs over anything else. The lack of love and support he felt in his childhood, coupled with the untimely deaths of both his father and brother in such a short period of time left Curtis chronically depressed, something he still suffers with today.

Given the lack of supervision and negative influences, Curtis got into trouble on his own and with his friends in the neighborhood. At 13 years old, he was stabbed when he and his friends were "messing" with a homeless man in the street. He was stabbed again in his 20s when he intervened to protect a woman his friend had slapped (friends of the woman returned to the scene and stabbed Curtis thinking he was the one who had hit her). He was shot a few years later as an innocent bystander while attending an outdoor barbeque at the Kings Tower projects. Curtis also struggled in school. He was expelled from P.S. 208 in Harlem in the fifth grade because he misbehaved and was not able to focus. He then attended P.S. 207, where he was placed in special education. Curtis does not know what disability he had that caused him to be placed in the special ed track. Looking back, he believes that his parents were too inattentive to care about his schooling or advocate for the support he would have needed to help with any learning disabilities. He attended the Joan of Arc School between the ages of 13 and 14 and was slated to start at Martin Luther King High School in Manhattan but was arrested for making a hand-to-hand sale on the street. He attended a juvenile detention program in upstate New York, but once he was released, at age 15, he stopped attending school altogether. He never finished the 9th grade. Looking back, he deeply regrets not finishing school or getting his GED.

### II. Despite his Lack of Preparation for Adulthood, Curtis has Provided Care and Support to his Loved Ones

When he was in his early 20s, Curtis was in a relationship with Tamisha Penn. Together they have a daughter, Nyla Hilliard, who is now 21 years old. Curtis and Tamisha ultimately separated because Curtis was unfaithful, but they remain on good terms. He is involved in Nyla's life and is extremely proud of her, particularly of the fact that she is the first in his family to go to college. She is currently enrolled in Morgan State University in Baltimore, Maryland, and lives with her mother in Harlem when she is not away at school. Her letter to the Court describes how Curtis has been a good, caring and present father to her and has encouraged her to finish her schooling. Curtis has always helped support her emotionally and financially, including with her college tuition.

Curtis was in an on-and-off relationship with Lidia Conway between 2012 and 2022 and Courtney Gardner between 2017 and 2022. Although Curtis is not proud of his infidelity, he has children with both women. He has a daughter, age 16 months, with Lidia, and a son, age 20 months, with Courtney. Ultimately, Curtis' heart is with Courtney, but he has struggled to leave Lidia completely because she is sick with kidney problems. Prior to his arrest, Curtis was supporting both women and their children financially, including staying with his infant daughter when Lidia has been hospitalized or needed to see doctors because of her health issues. Despite his arrest and being detained at the MDC, Curtis remains on good terms with both Lidia and Courtney.

### III.  Curtis' Participation in the Charged Conspiracy

Drugs were everywhere in the Harlem neighborhood where Curtis spent most of childhood and, since he grew up seeing his father selling drugs, in his own home. It is thus sad, but not surprising, that Curtis modeled this behavior. He sold drugs as a teenager, and at age 19 he did three years in the New York State Correctional System. Thereafter he turned to odd jobs, gambling and later selling marijuana as a way to make ends meet and support his daughter Nyla. However, with his older daughter entering college and two babies born a few months apart, all of whom he wanted to provide for, the financial pressure grew. Curtis resorted to selling cocaine to make more money. He participated in mid-level cocaine sales to a small set of his own customers, and he was involved in some of the dealings of his co-defendants, which includes his brother Quincy and friends they both knew from the neighborhood. This included Curtis allowing others to keep their drugs at the Harlem apartment where he lived on a few occasions while he was staying with Courtney who lives in the Bronx.

### IV.  Curtis' Underlying Good Character and Desire to Rehabilitate Himself

Despite his conduct in this case, Curtis' relationship with his mother and his children shows his underlying good character. In her letter to the Court, his mother describes Curtis as a sweet and caring son and father who has always been there for her and his children. His mother has been living drug-free now for 22 years and has turned her own life around (she works for the New York State Department of Environmental Protection and is a choir member and deacon in her church). She writes in her letter to the Court that she is ready to support Curtis in his life after he is released.

Just as his mother has turned her life around, this case has been a wakeup call for Curtis to do the same. He is ready to take accountability for his actions, do his time and focus on bettering himself so he can live a law-abiding life. Among other things, he wants to get his GED and participate in mental health and other programming through the BOP. Curtis has an entrepreneurial spirit and has a few ideas for businesses he would like to start. Before he was arrested in this case, he was in the process of renovating a mini school bus to make it into a food truck to start a business selling fish and chips. He has some money in a bank account from lottery winnings that he is hoping to use to start a business upon his release.

### V. The Court Should Also Consider the Harsh Conditions of Confinement Because of the COVID-19 Pandemic as a 3553(a) Factor Warranting a Shorter Sentence

Time spent incarcerated during the pandemic has been harder and more punitive than during normal times. Although Curtis has only been at the MDC during the last ten months, the conditions there have continued to be unusually harsh.  We know this Court is familiar with how horrible the conditions have been at the MDC during the pandemic and has cited them at other sentencings.  Curtis in particular has experienced, among other things, consecutive days and weeks of lengthy lockdowns that continue to this day; limited access to phones and email, and hardly any opportunity to have visits from loved ones; little to no recreation; minimal time spent outdoors; cold meals; few showers; limited supplies and virtually no comforts, even from the commissary – more restrictions than had previously been typical of solitary confinement.  As Curtis shared with probation during his interview, his underwear was recently stolen from his cell.  While this is something that may seem relatively trivial, it has been dehumanizing for Curtis who waited an extremely long time to get something as basic as underwear since visits to the commissary have been so infrequent and underwear, like many other items, has been out of stock.  In fact, the commissary is still out of socks and underwear, so Curtis has resorted to buying them second hand from other inmates to replace what had been stolen.

As stands to reason, many courts in the Southern District, including this one, have considered at sentencing the horrific conditions suffered by those housed at the MDC and MCC during the pandemic and provided downward variances on that basis.  *See, e.g., United States v. Day*, 19 Cr. 619 (CM) (S.D.N.Y. Apr. 29, 2021) (criticizing horrific conditions at MDC and MCC before and during pandemic, that are as bad as a Columbian prison, "but more so because we're supposed to know better" and sentencing defendant to mandatory minimum but stating would have sentenced to time served if allowed); *United States v. Espinal*, 19 Cr. 622 (DLC) (S.D.N.Y. Aug. 6, 2020) (noting that but for the pandemic, defendant would have been given a guidelines sentence); *United States v. Cirino*, 19 Cr. 323 (JSR) (S.D.N.Y. July 17, 2020) ("it is fair to say that conditions in the prison system now result in a harshness that is not the norm and that ought to be recognized by the court as a mitigating factor. In effect, you are serving harder time every day you are in the federal prisons"); *United States v. Aracena De Jesus*, 20 Cr. 19 (PAE) (S.D.N.Y. July 1, 2020) ("Finally, I am mindful . . . that you have served most of your time in prison so far during the worst pandemic in this country during the past 100 years … I'm mindful that your experience in prison as a result of the pandemic… the ensuing lockdown, and your own illness was frightful. Prison is supposed to be punishment, but it is not supposed to be trauma of that nature or close…. Any mature system of justice, any thoughtful judge in imposing the reasonable sentence here would have to recognize the unexpected and regrettable ardors that you experienced since your arrest in December").[1]

---

[1] Even prior to the pandemic, a number of judges in the Southern and Eastern Districts found bases for downward variances for defendants housed at the MDC during the two weeks in January 2019 that the facility experienced a power-outage. While the conditions at the MDC during that period were appalling in

Some Judges in this District have quantified the lower sentences and credited defendants time and a half to two days for every day served in pretrial detention on account of the horrible conditions. *See, e.g., United States v. Merchant*, No. 18 Cr. 527 (KMW) (S.D.N.Y. Oct. 12, 2021) (providing two days credit for every day served prior to sentencing); *United States v. Gonzalez*, 18 Cr. 669 (JPO) (S.D.N.Y. Apr 2, 2021) (stating harsh conditions of federal detention during pandemic was "essentially the equivalent of either time and a half or two times what would ordinarily be served" in sentencing defendant to time served or 24 months in drug case where guidelines were 78-97 months).

Considering that Curtis has been detained for approximately ten months, we respectfully submit that sentencing him to 60 months, which would in effect credit him with a ten-month variance below the low end of the guidelines, would be appropriate given the unusually harsh conditions he has been subjected to, and will continue to be subjected to, at least until he is designated to a better facility.

****

For all of these reasons, we respectfully submit that a sentence of 60 months would be sufficient by not greater than necessary to serve the purposes of sentencing under §3553(a). We ask for such a sentence without minimizing what Curtis has done. As we described above, he truly regrets his conduct, and this arrest and being detained under such horrific conditions have been the impetus he needed to live a law-abiding life. Five years is a substantial sentence. It would be sufficiently punishing and allow Curtis the time to work through his own problems and would still give him the chance to turn his life around thereafter. Curtis is 45 years old now. With such a sentence, by the time he is released he would be close to 50 years old, an age at which chances of recidivating go down considerably. We believe that, instead of sentencing him to more time, he should be allowed to redeem himself through a longer period of post release supervision with conditions that the Court deems appropriate.

Respectfully submitted,

*Sarah M. Sacks*

---

their own right, and such variances clearly justified, those harsh conditions lasted only two weeks. By comparison, the pandemic and the poor conditions have lasted for more than two and a half years and show no signs of letting up.